**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL MOORE,<br><br>       Petitioner,<br><br>   v.<br><br>JAMES D. HARTLEY, Warden,<br><br>       Respondent. | Case No. 1:13-cv-00883-LJO-SKO-HC<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS THE PETITION FOR WRIT OF HABEAS CORPUS WITHOUT LEAVE TO AMEND (DOC. 1), DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DIRECT THE CLERK TO CLOSE THE CASE<br><br>**OBJECTIONS DEADLINE:  30 DAYS** |

    Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 through 304.  Pending before the Court is the petition, which was filed on June 12, 2013.

    I.  <u>Screening the Petition</u>

    Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (Habeas Rules) requires the Court to make a preliminary review of each petition for writ of habeas corpus. The

Court must summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court...." Habeas Rule 4; O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990); see also Hendricks v. Vasquez, 908 F.2d 490 (9th Cir. 1990). Habeas Rule 2(c) requires that a petition 1) specify all grounds of relief available to the Petitioner; 2) state the facts supporting each ground; and 3) state the relief requested. Notice pleading is not sufficient; the petition must state facts that point to a real possibility of constitutional error. Rule 4, Advisory Committee Notes, 1976 Adoption; O'Bremski v. Maass, 915 F.2d at 420 (quoting Blackledge v. Allison, 431 U.S. 63, 75 n.7 (1977)). Allegations in a petition that are vague, conclusory, or palpably incredible are subject to summary dismissal. Hendricks v. Vasquez, 908 F.2d at 491.

The Court may dismiss a petition for writ of habeas corpus either on its own motion under Habeas Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed. Advisory Committee Notes to Habeas Rule 8, 1976 Adoption; see, Herbst v. Cook, 260 F.3d 1039, 1042-43 (9th Cir. 2001). However, a petition for habeas corpus should not be dismissed without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted. Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971).

Here, Petitioner alleges that he is serving a sentence of fifteen years to life imposed in the Superior Court of the State of California, County of Los Angeles, on January 12, 1982, for second degree murder. (Pet., doc. 1, 9-10.) Petitioner challenges a

2

decision of California's Board of Parole Hearings (BPH) finding Petitioner unsuitable for parole after a hearing held on March 6, 2012. Petitioner raises the following claims in the petition: 1) denial of parole violated Petitioner's rights under the Due Process Clause of the Fourteenth Amendment because it was arbitrary, capricious, and unfair; 2) the repeated denial of parole constituted cruel and/or unusual punishment under the Constitution and the California Constitution; 3) the repeated denial of parole violated the Equal Protection Clause of the Fourteenth Amendment and the California Constitution; 4) the BPH failed to consider seriously Petitioner's having taken, albeit belatedly, full responsibility for the crime, and belated acceptance of responsibility did not indicate current dangerousness to the public safety; 5) the current psychological evaluation was fundamentally flawed because it was inaccurate, speculative, and in conflict with previous evaluations; 6) the BPH violated Cal. Pen. Code § 3041(b) by relying on arrests that did not result in actual charges or complete prosecutions even though petitioner admitted that one or more were true; 7) the BPH's consideration of prison rule infractions more than twenty years old while failing to consider relevant information concerning the prison environment concerning inmate behavior violated due process; and 8) the BPH did not meet its burden of proof by a preponderance of the evidence based on the relevant record at the time of the hearing. (Id. at 14-15.)

II. State Law Claims

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies to the petition. Lindh v.

3

Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).

Federal habeas relief is available to state prisoners only to correct violations of the United States Constitution, federal laws, or treaties of the United States. 28 U.S.C. § 2254(a). Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation. Wilson v. Corcoran, 562 U.S. — , 131 S.Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Alleged errors in the application of state law are not cognizable in federal habeas corpus. Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002) (an ex post facto claim challenging state court's discretionary decision concerning application of state sentencing law presented only state law issues and was not cognizable in a proceeding pursuant to 28 U.S.C. § 2254); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996). The Court accepts a state court's interpretation of state law. Langford v. Day, 110 F.3d at 1389. In a habeas corpus proceeding, this Court is bound by the California Supreme Court's interpretation of California law unless the interpretation is deemed untenable or a veiled attempt to avoid review of federal questions. Murtishaw v. Woodford, 255 F.3d 926, 964 (9th Cir. 2001).

Here, Petitioner's first three claims (due process, cruel and unusual punishment, and equal protection) are based on the Constitution and the California Constitution. To the extent these claims rest on state constitutional protections, they do not warrant relief in this proceeding pursuant to § 2254, and must be dismissed.

Petitioner's sixth claim concerning a violation of Cal. Pen. Code § 3041(b) rests on a state statute and therefore is not

4

cognizable in this proceeding.  To the extent Petitioner's eighth claim concerning the insufficiency of evidence rests on a state law standard for the burden of proof, this claim is not cognizable in this proceeding.  Likewise, to the extent that Petitioner's fourth, fifth, and seventh claims challenge the BPH's weighing or consideration and evaluation of various items of evidence, Petitioner's claims necessarily rest on the state law standards for parole suitability determinations.  In sum, all these claims suffer from the defect of resting on state and not federal law.

    Petitioner's state law claims are defective because of their nature as claims based on state law and not because of a dearth of factual allegations.  Thus, Petitioner could not set forth tenable state law claims even if leave to amend were granted.  Accordingly, the state law claims should be dismissed without leave to amend.

    III.  <u>Failure to State Cognizable Due Process Claims</u>

        A.  <u>Procedural Due Process</u>

    The Supreme Court has characterized as reasonable the decision of the Court of Appeals for the Ninth Circuit that California law creates a liberty interest in parole protected by the Fourteenth Amendment Due Process Clause, which requires fair procedures with respect to the liberty interest. <u>Swarthout v. Cooke</u>, 562 U.S. B, 131 S.Ct. 859, 861-62 (2011).  However, the procedures required for a parole determination are the minimal requirements set forth in <u>Greenholtz v. Inmates of Neb. Penal and Correctional Complex</u>, 442

U.S. 1, 12 (1979).[1]  Swarthout v. Cooke, 131 S.Ct. 859, 862.  In Swarthout, the Court rejected inmates' claims that they were denied a liberty interest because there was an absence of some evidence to support the decision to deny parole.  The Court stated:

> There is no right under the Federal Constitution
> to be conditionally released before the expiration of
> a valid sentence, and the States are under no duty
> to offer parole to their prisoners.  (Citation omitted.)
> When however, a State creates a liberty interest,
> the Due Process Clause requires fair procedures for its
> vindication-and federal courts will review the
> application of those constitutionally required procedures.
> In the context of parole, we have held that the procedures
> required are minimal.  In Greenholtz, we found
> that a prisoner subject to a parole statute similar
> to California's received adequate process when he
> was allowed an opportunity to be heard and was provided
> a statement of the reasons why parole was denied.
> (Citation omitted.)

Swarthout, 131 S.Ct. 859, 862.  The Court concluded that the petitioners had received the process that was due as follows:

> They were allowed to speak at their parole hearings
> and to contest the evidence against them, were afforded
> access to their records in advance, and were notified

---

[1]  In Greenholtz, the Court held that a formal hearing is not required with respect to a decision concerning granting or denying discretionary parole; it is sufficient to permit the inmate to have an opportunity to be heard and to be given a statement of reasons for the decision made.  Id. at 16.  The decision maker is not required to state the evidence relied upon in coming to the decision.  Id. at 15-16.  The Court reasoned that because there is no constitutional or inherent right of a convicted person to be released conditionally before expiration of a valid sentence, the liberty interest in discretionary parole is only conditional and thus differs from the liberty interest of a parolee.  Id. at 9.  Further, the discretionary decision to release one on parole does not involve retrospective factual determinations, as in disciplinary proceedings in prison; instead, it is generally more discretionary and predictive, and thus procedures designed to elicit specific facts are unnecessary.  Id. at 13.  In Greenholtz, the Court held that due process was satisfied where the inmate received a statement of reasons for the decision and had an effective opportunity to insure that the records being considered were his records, and to present any special considerations demonstrating why he was an appropriate candidate for parole.  Id. at 15.

> as to the reasons why parole was denied....
>
> That should have been the beginning and the end of the federal habeas courts' inquiry into whether [the petitioners] received due process.

Swarthout, 131 S.Ct. at 862. The Court in Swarthout expressly noted that California's "some evidence" rule is not a substantive federal requirement, and correct application of California's "some evidence" standard is not required by the Federal Due Process Clause. Id. at 862-63.

Here, in his fourth claim, Petitioner challenges the adequacy of the BPH's consideration of Petitioner's acknowledgment of responsibility for his commitment offense and the weight and sufficiency of that evidence in the BPH's determination that Petitioner remained dangerous to the public safety. Petitioner is raising a "some evidence" claim because he is essentially challenging the sufficiency of the evidence to support the BPH's finding of dangerousness.

In his fifth claim, Petitioner challenges the weight or sufficiency of a psychological evaluation to support a finding of unsuitability. In his seventh claim, Petitioner similarly challenges the BPH's weighing of twenty-year-old disciplinary offenses in the context of the prison environment, and in his eighth claim, Petitioner directly challenges the weight of the evidence. However, this type of review is foreclosed by Swarthout, which precludes even a review of the state court's application of the minimal "some evidence" standard.

Petitioner does not state facts that point to a real possibility of constitutional error or that otherwise would entitle

7

Petitioner to habeas relief because California's "some evidence" requirement is not a substantive federal requirement. Review of the record for "some evidence" to support the denial of parole is not within the scope of this Court's habeas review under 28 U.S.C. § 2254.

A review of the transcript of the parole suitability hearing held on March 6, 2012 (doc. 1, 73-157), reflects that Petitioner was present at the hearing with counsel, who had reviewed all documentation before the hearing. Petitioner testified at length concerning various parole suitability factors, including the facts of the commitment offense; Petitioner's attitude towards the offense; Petitioner's programming, behavior, and development in prison; and his parole plans. (Id. at 73, 75, 80-129.) Petitioner's counsel and Petitioner made closing statements. (Id. at 135-44.) Petitioner was present when the panel announced the reasons for its decision that Petitioner posed an unreasonable risk of danger if released, which included the gravity of the commitment offense (shooting a fourteen-year-old victim without provocation and wounding another person who was present), a psychological evaluation that indicated that Petitioner had limited insight and had not fully identified the causative factors for his criminality, his extensive disciplinary record in prison, and untruthfulness in his statements to the panel and to others inside the prison. (Id. at 145-57, 403.)

It thus appears that Petitioner received all process that was due with respect to the suitability hearing. Although Petitioner contends that the hearing was a pro forma procedure at which the commissioners merely went through the motions to appear to provide

8

due process of law, the record of the proceeding submitted by Petitioner demonstrates that he received the appropriate procedures, the panel members considered the pertinent factors of parole suitability, and a decision based on those factors was made and articulated to the Petitioner.  The record does not bear out Petitioner's conclusional assertions concerning the nature of the hearing.

Accordingly, Petitioner's fourth, fifth, seventh, and eighth claims should be dismissed without leave to amend.

### B.  Substantive Due Process

Petitioner argues that the BPH merely went through the motions of procedural due process to reach a preordained result, and thus violated his right to substantive due process of law.  Petitioner relies on state regulations that direct the BPH to consider all information that bears on an inmate's suitability for parole.  He argues that the BPH did not consider how his character, attitudes, and values had changed, or what influences caused significant change to occur.  (Pet., doc. 1, 51-52.)  Petitioner argues that the state has no legitimate interest in prolonging incarceration of inmates who have served their time and whose post-conviction records strongly suggest they are not unreasonable risks to the public safety.

The substantive component of due process protects against governmental interference with those rights "implicit in the concept

9

of ordered liberty." Palko v. Connecticut, 302 U.S. 319, 324-25 (1937). It forbids the government to infringe fundamental liberty interests, such as the right to liberty, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest. Reno v. Flores, 507 U.S. 292, 301-02 (1993).

Petitioner has failed to allege facts warranting a conclusion that the BPH's decision infringed a federally protected, fundamental right. Petitioner simply concludes that the action of the BPH, which was undertaken in accordance with procedures that satisfied the requirements of procedural due process of law, violated his right to substantive due process of law. Petitioner's conclusional allegations do not state facts that point to a real possibility of constitutional error.

Further, even where state law creates a liberty interest in parole, there is no federal right to be conditionally released before the expiration of a valid sentence. Roberts v. Hartley, 640 F.3d 1042, 1045 (9th Cir. 2011) (citing Swarthout v. Cooke, 131 S.Ct. at 861-62). In Swarthout v. Cooke, the Court unequivocally determined that the Constitution does not impose on the states a requirement that its decisions to deny parole be supported by a particular quantum of evidence, independent of any requirement imposed by state law. Roberts v. Hartley, 640 F.3d at 1046; Pearson v. Muntz, 639 F.3d 1185, 1191 (9th Cir. 2011). A state's

misapplication of its own laws does not provide a basis for granting a federal writ of habeas corpus. Roberts v. Hartley, 640 F.3d at 1046.

Although Petitioner asserts that his claims are based on a right to substantive due process, there is no substantive due process right created by California's parole scheme; if the state affords the procedural protections required by Greenholtz and Swarthout v. Cooke, the Constitution requires no more. Roberts v. Hartley, 640 F.3d at 1046.

Accordingly, Petitioner's substantive due process claim should be dismissed. Further, because it does not appear that Petitioner could allege a tenable substantive due process claim if leave to amend were granted, the claim will be dismissed without leave to amend.

  IV.  Failure to State Facts Showing a Violation of Equal Protection

Petitioner argues that the denial of parole resulted in a violation of the equal protection of the law.

Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race, religion, or membership in a protected class subject to restrictions and limitations necessitated by legitimate penological interests. Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Bell v. Wolfish, 441 U.S. 520, 545-46 (1979). The Equal Protection Clause essentially directs that all persons similarly situated should be treated alike. City of Cleburne, Texas v. Cleburne Living Center,

11

473 U.S. 432, 439 (1985).  Violations of equal protection are shown when a respondent intentionally discriminates against a petitioner based on membership in a protected class, Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or when a respondent intentionally treats a member of an identifiable class differently from other similarly situated individuals without a rational basis, or a rational relationship to a legitimate state purpose, for the difference in treatment, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 601-02 (2008).

Here, Petitioner has not alleged that membership in a protected class was the basis of any alleged discrimination.  He has not alleged any invidiousness or intentional treatment that was different from treatment of any similarly situated individuals, or that any such treatment lacked a rational basis, or a rational relationship to a legitimate state purpose, for the difference in treatment.  Instead, Petitioner appears to base his claim on the absence of evidence to support the suitability decision.

Petitioner may be arguing that he was denied the equal protection of the laws because under the circumstances of his commitment offense and his history in prison, he presented no risk to society, and yet he was denied release even though he had served over thirty years for second degree murder.  However, Petitioner has neither alleged nor shown that with respect to all pertinent factors of parole suitability, he is similarly situated with others who may have served less time after conviction of murder.

Legislation that discriminates based on characteristics other than race, alienage, national origin, and sex is presumed to be

valid and must only be rationally related to a legitimate state interest in order to survive an equal protection challenge. City of Cleburne, 473 U.S. at 440. Prisoners who are eligible for parole are not a suspect class entitled to heightened scrutiny. See, Mayner v. Callahan, 873 F.2d 1300, 1302 (9th Cir. 1989) (prisoners not a suspect class). Furthermore, public safety is a legitimate state interest. See, Webber v. Crabtree, 158 F.3d 460, 461 (9th Cir. 1998) (health and safety are legitimate state interests). Under California law, a prisoner's suitability for parole depends on the effect of the prisoner's release on the public safety. Cal. Pen. Code § 3041(b) (mandating release on parole unless the public safety requires a more lengthy period of incarceration). California's parole system is thus both intended and applied to promote the legitimate state interest of public safety. See, Webber v. Crabtree, 158 F.3d at 461. Petitioner has neither shown nor even suggested how the decision in the present case could have constituted a violation of equal protection of the laws. Additionally, the Court notes that parole consideration is discretionary and does not provide the basis of a fundamental right. Mayner v. Callahan, 873 F.2d at 1301-02.

    Here, if leave to amend were granted, Petitioner could not state a tenable equal protection claim based on the BPH's decision. Petitioner's claim rests on the specific facts of his case. The Supreme Court has recognized that the parole suitability decision, as distinct from the parole revocation decision, does not lend itself to the type of comparison that Petitioner appears to invite the Court to make:

    The parole release decision, however, is more subtle and

13

> depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release. Unlike the revocation decision, there is no set of facts which, if shown, mandate a decision favorable to the individual. The parole determination, like a prisoner-transfer decision, may be made "for a variety of reasons and often involve[s] no more than informed predictions as to what would best serve [correctional purposes] or the safety and welfare of the inmate." Meachum v. Fano, 427 U.S., at 225, 96 S.Ct., at 2538. The decision turns on a "discretionary assessment of a multiplicity of imponderables, entailing primarily what a man is and what he may become rather than simply what he has done." Kadish, The Advocate and the Expert Counsel in the Peno-Correctional Process, 45 Minn.L.Rev. 803, 813 (1961).

Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 9-10 (1979). Because parole release determinations are discretionary and are not subject to evaluation based on any particular combination of factors of parole suitability, the fact that Petitioner might posit some similarity with other inmates with respect to offenses, history, or other parole suitability factors would not be sufficient to entitle him to relief based on the Equal Protection Clause.

In sum, Petitioner has failed to set forth specific facts that point to a real possibility of constitutional error based on the Equal Protection Clause of the Fourteenth Amendment. Petitioner could not state a tenable equal protection claim if leave to amend were granted; thus, his equal protection claim should be dismissed without leave to amend.

V.   Cruel and Unusual Punishment

Petitioner argues that the denial of parole constituted cruel and unusual punishment. He alleges he has been confined far beyond

14

the maximum term set forth under California law for second degree murder. The Court notes that although Petitioner refers to a history of previous denials of parole, the only decision challenged by Petitioner in the petition before the Court is the decision made after a hearing on March 6, 2012.

There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the states are under no duty to offer parole to their prisoners. Swarthout v. Cooke, 131 S.Ct. 859, 862. A criminal sentence that is "grossly disproportionate" to the crime for which a defendant is convicted may violate the Eighth Amendment. Lockyer v. Andrade, 538 U.S. 63, 72 (2003); Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring); Rummel v. Estelle, 445 U.S. 263, 271 (1980). Outside of the capital punishment context, the Eighth Amendment prohibits only sentences that are extreme and grossly disproportionate to the crime. United States v. Bland, 961 F.2d 123, 129 (9th Cir. 1992) (quoting Harmelin v. Michigan, 501 U.S. 957, 1001, (1991) (Kennedy, J., concurring)). Such instances are "exceedingly rare" and occur in only "extreme" cases. Lockyer v. Andrade, 538 U.S. at 72-73; Rummel, 445 U.S. at 272. So long as a sentence does not exceed statutory maximums, it will not be considered cruel and unusual punishment under the Eighth Amendment. See United States v. Mejia-Mesa, 153 F.3d 925, 930 (9th Cir. 1998); United States v. McDougherty, 920 F.2d 569, 576 (9th Cir. 1990).

In California, Petitioner's offense, second degree murder, is generally punished by imprisonment in the state prison for a term of fifteen (15) years to life. Cal. Pen. Code § 190(a). An indeterminate life sentence is in legal effect a sentence for the

maximum term of life. People v. Dyer, 269 Cal.App.2d 209, 214 (1969). Generally, a convicted person serving an indeterminate life term in state prison is not entitled to release on parole until he is found suitable for such release by the Board of Parole Hearings (previously, the Board of Prison Terms). Cal. Pen. Code § 3041(b); Cal. Code of Regs., tit. 15, § 2402(a). Under California's Determinate Sentencing Law, an inmate such as Petitioner who is serving an indeterminate sentence for murder may serve up to life in prison, but he does not become eligible for parole consideration until the minimum term of confinement is served. In re Dannenberg, 34 Cal.4th 1061, 1078 (2005). The actual confinement period of a life prisoner is determined by an executive parole agency. Id. (citing Cal. Pen. Code § 3040). Thus, Petitioner's sentence has not exceeded the statutory maximum. Additionally, a sentence of fifty years to life for murder with use of a firearm is not grossly disproportionate. Plasencia v. Alameida, 467 F.3d 1190, 1204 (9th Cir. 2006).

In sum, Petitioner has not stated facts that would entitle him to relief in a § 2254 proceeding pursuant to the prohibition against cruel and unusual punishment in the Eighth and Fourteenth Amendment's. In view of the pertinent state statutory scheme, Petitioner could not allege a tenable cruel and unusual punishment claim. Therefore, it will be recommended that Petitioner's cruel and unusual punishment claim be dismissed without leave to amend.

### VI.   Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention

complained of arises out of process issued by a state court. 28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2). Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether: (1) the petition states a valid claim of the denial of a constitutional right, or (2) the district court was correct in any procedural ruling. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong. Id. An applicant must show more than an absence of frivolity or the existence of mere good faith; however, an applicant need not show the appeal will succeed. Miller-El v. Cockrell, 537 U.S. at 338.

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner. Petitioner has not made a substantial showing of the denial

of a constitutional right.  Accordingly, no certificate of appealability should issue.

### VII. Recommendations

In accordance with the foregoing, it is RECOMMENDED that:

1) The petition for writ of habeas corpus be DISMISSED without leave to amend; and

2) The Court DECLINE to issue a certificate of appealability; and  3) The Clerk be DIRECTED to close the case because dismissal will terminate the case in its entirety.

IT IS SO ORDERED.

Dated:  **July 15, 2013**                    **/s/ Sheila K. Oberto**
                              UNITED STATES MAGISTRATE JUDGE